IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RUSSELL WILLIAMS,<br><br>              Defendant. | CRIMINAL ACTION<br>NO. 19-cr-629-3 |

**Slomsky, J.**                                                                                                                 **August 3, 2022**

**OPINION**

**I.      INTRODUCTION**

Before the Court is Defendant Russell Williams's ("Williams" or "Defendant") Motion to Sever Pursuant to Federal Rule of Criminal Procedure 14(a).[1] (See Doc. No. 121 at 2.) Defendant seeks a separate trial from his co-Defendants, John Suggs and Nickolas Passineau (collectively "co-Defendants").[2] (Id.) The Superseding Indictment charges Defendants with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) and 2, and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2. (Id.) Williams's charges stem from his alleged involvement on October 19, 2017 in an armed robbery of Castor Pharmacy, located at 6449 Castor Avenue in Philadelphia, Pennsylvania ("the Castor Pharmacy Robbery")

---

[1]  Federal Rule of Criminal Procedure 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

FED. R. CRIM. P. 14(a).

[2]  Two other Defendants in this case, Khalil Werts ("Werts") and Tameer Miller ("Miller"), have pled guilty.

1

(Counts One and Two). (Id.) His co-Defendants, Suggs and Passineau, are charged not only in connection with the Castor Pharmacy Robbery, but also with the February 22, 2018 robbery of Smith Pharmacy, located at 841 East Hunting Park Avenue in Philadelphia, Pennsylvania (the "Smith Pharmacy Robbery") (Counts Three and Four). (Id.)

The Government filed a Response in Opposition to Defendant's Motion to Sever. (Doc. No. 126.) A hearing on the Motion was held on February 17, 2022. (Doc. No. 218.) Defendant Williams filed a supplemental memorandum in support of severance on April 22, 2022. (Doc. No. 221.) For reasons that follow, Defendant's Motion will be denied.

## II.     BACKGROUND

On March 5, 2020, a grand jury returned a 4-count Superseding Indictment, charging Williams, Suggs, Passineau, Werts, and Miller with robbery which interferes with interstate commerce, in violation of Title 18 U.S.C. §§ 1951(a) and 2, and with using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of Title 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, in connection with the Smith Pharmacy Robbery and the Castor Pharmacy Robbery. (Doc. No. 52.) Count One of the Superseding Indictment charges Suggs, Passineau, Williams, and Werts with committing the Castor Pharmacy Robbery. (Doc. No. 218 at 159:13-18.) Count Two charges these same individuals with using a firearm during and in relation to the robbery. (Id.) Count Three charges Suggs, Passineau, and Miller with committing the Smith Pharmacy Robbery. (Id.) Court Four charges the same Defendants with using a firearm during and in relation to the Smith Pharmacy Robbery. (Id.) Thus, Williams was only charged in the first two counts of the Superseding Indictment in connection with the Castor Pharmacy Robbery, and in this robbery, he was the lookout who never went inside the store.

On February 15, 2021, Williams moved for a separate trial from that of his co-Defendants pursuant to Federal Rule of Criminal Procedure 14. He makes several claims in support of his Motion. First, he argues that he will be prejudiced at a joint trial by the spillover of evidence from the Smith Pharmacy Robbery, which he is not involved in. (Doc. No. 121 at 3 ¶ 4.) Specifically, he contends that a jury is unlikely to effectively compartmentalize facts specific only to him regarding the Castor Pharmacy Robbery when considering his guilt or innocence on both robberies. Moreover, he claims that the spillover evidence and multiple charges create the prejudicial appearance of a wide-ranging conspiracy involving several robberies. (Doc. No. 121 at 3 ¶ 5; Doc. No 121-1 at 5-7.) Second, Defendant argues that a jury instruction[3] would not likely dispel any prejudice because a jury would harbor hostility towards him based on his association with his co-Defendants and the heightened emotional nature of a drug trial, given the opioid crisis in Philadelphia. (Doc. No. 121-1 at 9; Doc. No. 121 at 3 ¶ 6.) Finally, Defendant asserts that any adverse impact on "judicial economy" by holding two trials, that is, trying him separately from his

---

[3] The Model Third Circuit jury instruction that would be used here provides:

> The defendants *(names)* are all charged with *(more than one offense) (several offenses)*; each offense is charged in a separate count of the indictment. The number of offenses charged is not evidence of guilt, and this should not influence your decision in any way. Also, in our system of justice, guilt or innocence is personal and individual. You must separately consider the evidence against each defendant on each offense charged, and you must return a separate verdict for each defendant on each offense. For each defendant and offense, you must decide whether the government has proved beyond a reasonable doubt that the particular defendant is guilty of the particular offense. Your decision on any one defendant or any one offense, whether guilty or not guilty, should not influence your decision on any of the other defendants or offenses. Each offense and each defendant should be considered separately.

Third Circuit Model Criminal Jury Instructions No. 3.14 (Separate Consideration – Multiple Defendants Charged with Same Offenses)

co-Defendants, is greatly outweighed by the interests of justice and Defendant's right to a fair trial. (Doc. No. 121 at 3 ¶ 7-9.)  And during the hearing in February 2022 and in the supplemental memorandum filed on April 22, 2022, Defendant further emphasized judicial economy favoring one trial is more of a consideration when multiple defendants are named in a conspiracy charge, but since there is no conspiracy charge here, there is less need for a joint trial.  (Doc. No. 218 at 151-52; Doc. No. 221.)

On February 23, 2021, the Government filed a Response in Opposition to the Motion. (Doc. No. 126.)  In the Response, the Government argues first that the three remaining Defendants are properly joined for trial under Federal Rule of Criminal Procedure 8(b),[4] even though all Defendants are not charged in each count, because Defendant is alleged to have participated in the same act or transaction as his co-Defendants.[5]  (Doc. No. 126 at 3.)  Second, the Government argues Defendant has failed to demonstrate any unfair prejudice that would overcome the preference for a single trial of jointly indicted defendants.  (Doc. No. 126 at 5-7.)  The Government submits that Defendant's claims of prejudice are purely speculative.  (Doc. No. 126 at 8.)  Third,

---

[4]  Federal Rule of Criminal Procedure 8(b) states:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

FED. R. CRIM. P. 8(b).

[5]  Defendant does not raise a defense of improper joinder under Rule 8(b), only prejudicial joinder under Rule 14.  (See Doc. No. 121-1.)  Thus, whether joinder is proper under Federal Rule of Criminal Procedure 8(b) need not be further discussed.

the Government argues that a limiting instruction would be sufficient to ensure a fair trial. (Doc. No. 126 at 8-9.)

The Motion is now ripe for a decision.

### III. LEGAL STANDARD

Defendant's Motion is based on Federal Rule of Criminal Procedure 14. Along with Rule 8(b), Rule 14 is designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." United States v. Adams, 2015 WL 894205 at *1 (E.D. Pa. Feb. 27, 2015) (quoting Burton v. United States, 391 U.S. 123, 131 n. 6 (1968)). When joinder is proper under Rule 8(b), the Court retains discretion to sever defendants to avoid unfair prejudice under Rule 14, which, as quoted earlier, provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials or counts, sever the defendants' trials, or provide any other relief that justice requires.

FED. R. CRIM. P. 14(a).

"[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). In Zafiro, the Supreme Court pointed to two situations that may create such a serious risk of prejudice: 1) when evidence that the jury should not consider against a defendant and that would not be admissible in a defendant's separate trial is admitted in a joint trial, and 2) when exculpatory evidence available to defendant tried alone is unavailable in a joint trial. Id. The Supreme Court further commented that relevant and competent testimony is not prejudicial merely because a defendant is tried jointly with a codefendant. Id.

5

Defendant bears the burden of showing "clear and substantial prejudice resulting in a manifestly unfair trial." United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991) (internal quotation marks omitted). Even when the risk of prejudice is high, less drastic measures than severance (such as limiting instructions) "often will suffice to cure any risk of prejudice." Adams, 2015 WL 894205 at *1 (quoting Zafiro, 506 U.S. at 539). The determination of risk of prejudice and appropriate remedies is left to the discretion of the district courts. Zafiro, 506 U.S. at 541.

## IV.   ANALYSIS

### A. Defendant's Motion will be denied because Defendant has not met his burden of showing that at a joint trial there would be clear and substantial prejudice.

Defendant's Motion will be denied because Defendant has not met his burden of showing that at a joint trial, there would be "clear and substantial prejudice resulting in a manifestly unfair trial." Eufrasio, 935 F.2d at 568. Defendant contends that spillover evidence from the co-Defendants' actions in the Smith Pharmacy Robbery will create prejudice against him in a joint trial where he is only charged in the Castor Pharmacy Robbery. (Doc. No. 121-1 at 5, 9.) Defendant argues further that a jury will not be able to effectively compartmentalize this spillover evidence because it creates the appearance of a wide-ranging conspiracy through similarities in the robberies which are charged in a single indictment. (Doc. No. 121-1 at 5-7.)

The specific trial right at risk in this case is that evidence admissible against co-Defendants Suggs and Passineau would not be admissible against Defendant Williams in a separate trial. At a joint trial, the Government would seek to admit evidence of Defendant Suggs's planning and preparation for the two robberies, his redistribution of stolen opioids immediately post-robberies as evidence of motive, and his possession of a firearm. (Doc. No. 209 at 2.) Additionally, because the two robberies are so similar, evidence of either robbery will be allowed at trial to prove the other against Suggs and Passineau. United States v. Suggs, No. 19-00629, 2022 WL 2168356 at

6

*4 (E.D. Pa. June 16, 2022). But, according to Williams, evidence of Suggs's and Passineau's involvement in the Smith Pharmacy Robbery and the robbery itself would not be admissible in separate trial of Defendant Williams.

However, a jury at a joint trial can reasonably be expected to compartmentalize the evidence and make a reliable decision about Defendant's guilt or innocence in the Castor Pharmacy Robbery in which he was merely a lookout. And even if prejudice may arise at the joint trial of Defendants, severance is not mandated when other measures, like limiting jury instructions at trial, can sufficiently cure the risk of unfair prejudice. Zafiro, 506 U.S. at 539 (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

The Third Circuit Court of Appeals has provided guidance on the matter of compartmentalization. In Davis, three defendants were tried together and found guilty of possession with intent to distribute controlled substances and possession of a firearm in relation to a drug felony. United States v. Davis, 397 F.3d 173, 176 (3d Cir. 2005). One defendant argued he was prejudiced at trial by being joined with another defendant who fled the scene and attempted to fire at a police officer. Id. at 182. The court concluded a jury could be expected to compartmentalize "relatively simple" facts when all events occurred on a single evening, charges involved only three defendants, and overly technical or scientific issues were not at issue. Id.

In Walker, defendant-brothers Barron and Barry Walker were charged with six identical counts of federal drug trafficking, firearm, and robbery charges. United States v. Walker, 657 F.3d 160, 165 (3d Cir. 2011). One brother (Barry) escaped from custody, was re-arrested a few days later in possession of cocaine with intent to distribute and charged with two additional offenses unrelated to the ones he shared with his brother. Id. The court concluded the facts were

uncomplicated enough that a jury could be expected to compartmentalize Barry's escape-related charges and not attribute this conduct to Barron. Id. at 170-71.

In Urban, eight defendants were plumbing inspectors employed by a municipality and issued construction permits and performed inspections. United States v. Urban, 404 F.3d 754, 759 (3d Cir. 2005). Evidence and testimony showed defendants were improperly accepting kickbacks from plumbers whose work they inspected to ensure timely and favorable inspections and treatment. Id. at 761. A chart showing which defendants accepted bribes from which plumbers was shown to the jury. Id. at 776. On appeal, one defendant (Rachuba) argued "the evidence of payments accepted by other Appellants enhanced his own guilt in the view of the jury." Id. The court held, however, that the jury was "fully capable of compartmentalizing the evidence against various Appellants." Id. at 776.

Here, compartmentalization to negate any potential prejudice will be as uncomplicated as in Davis, Walker, and Urban. Although Defendant argues that this case creates the appearance of a wide-ranging conspiracy through similarities in the robberies and the fact that they are charged in a single indictment, this Court has said previously that the facts of these robberies are not complex:

> The four counts against Defendants are discrete – for both the Castor and Smith Pharmacy Robberies, each Defendant is charged with one count of Hobbs Act Robbery and one count of using a firearm during and in relation to that robbery. The robberies were not complex and committed against two different pharmacies. Given this, the jury will likely not confuse the robberies and be able to compartmentalize the evidence on each charge.

Suggs, No. 19-00629 at *4; (Doc. No. 121-1 at 5-7.).

Evidence will be presented at trial that Suggs and Passineau went inside the pharmacies and committed the robberies. Their activities inside will be described for the jury with witness testimony and videos from the store cameras. (Doc. No. 209 at 9.) Apparently, the Government

8

will present evidence that Suggs had a firearm. (Id.) During one robbery, Williams was outside the store as the lookout. (Doc. No. 121-1 at 2.) The facts are simple and can be readily compartmentalized by a jury.

Moreover, a limiting jury instruction similar to the one noted previously will ensure that Defendant Williams's guilt or innocence will be decided by a jury based only on the evidence of his involvement in the Castor Pharmacy Robbery. Simply put, he will not be unfairly prejudiced by a joint trial with Suggs and Passineau.

**B. Defendant's Motion will be denied because his claim of jury hostility is speculative and would not override the jury instructions that would negate unfair prejudice.**

Defendant's Motion will also be denied because his claim of jury hostility is only speculative. The facts of this case are unlikely to create a severe emotional response by the jury that would override the limiting jury instruction noted above and other instructions on the Government's burden to prove guilt beyond a reasonable doubt on each element of each offense. Despite this removal of argued prejudice, Defendant still claims that jury instructions are unlikely to dispel prejudice because the jury will retain hostility against him because of evidence of his co-Defendants' violent actions during the robbery[6] and of the opioid crisis in Philadelphia. (Doc. No. 121-1 at 6-9.)

Defendant offers case law from the Fifth Circuit Court of Appeals to support his argument that when a case is so severely emotional, limiting instructions would not suffice to overcome prejudice and a severance should be granted. (Doc. No. 121-1 at 8.) In McRae, in the aftermath of Hurricane Katrina, a New Orleans police officer (Warren) shot at a suspected looter but did not

---

[6] The Castor Pharmacy Robbery took place shortly after the store opened in the morning. Three perpetrators entered the pharmacy. One struck the pharmacist in the face with a gun, knocked him to the ground, and continued to strike him while he was on the ground before compelling him to remove the controlled substances from a secure cabinet. (Doc. No. 121-1 at 2.)

9

know if he hit him. United States v. McRae, 702 F.3d 806, 812 (5th Cir. 2012). The victim's family drove him to a temporary police base hoping for medical care. Id. at 813. There, a verbal and physical altercation broke out between white police officers (not Warren) and the black family and friends of the shooting victim before police moved the car with the shooting victim's body inside and set it on fire. Id. at 818. Warren had no knowledge of what happened after he fired the initial unlawful shot in the shopping center parking lot and was not involved in a later coverup by the police. Id. at 823. The court held that the severely emotional nature and details of these events, including the later police coverup, could have unfairly prejudiced Warren in his joint trial with other officers and a severance was warranted. Id. at 828. In McRae, the court noted:

> …we are of the belief that limiting instructions could not mitigate the prejudice. In particular, (1) the marginal relationship between the charge and the evidence against Warren and that against his co-defendants; (2) the significant difference between the simpleness of the underlying charges—essentially use of excessive force—against Warren, in the performance of his duty as a police officer, and the crimes alleged against his co-defendants involving dishonesty, corruption, obstruction and cover-up; (3) the highly inflammatory and prejudicial nature of the charges and evidence against the co-defendants, from which Warren was disassociated, involving the burning Glover's body in Tanner's car, the racially motivated beating of Tanner and King; and the alleged alteration and distortion of a police investigative report convince us that the district court abused its discretion.

Id.

Although guns were used in the Castor Pharmacy Robbery and a pharmacist was beaten with a gun, this situation, though emotional and violent, is different from the widespread community outrage that arose in McRae. Although the violence committed in the Castor Pharmacy Robbery was unnecessary and the opioid crisis does continue to devastate Philadelphia, it is still speculative that a jury's emotions would rise to a level that would harbor hostility against Defendant since he was merely a lookout outside the pharmacy and did not participate in the

violence. The limiting and other instructions would dissipate the prejudice and ensure that Williams's receives a fair trial.

## V. CONCLUSION

For the foregoing reasons, Defendant Russell Williams's Motion for Severance (Doc. No. 121) will be denied. An appropriate Order follows.